## Case No. 8,473.

### LONAN et al. v. The C. H. NORTHRAM.

[1 N. J. Law J. 99.]

District Court, D. New Jersey. March 19, 1878.

NAVIGATION OF VESSELS.

1. As a result of rule 20 of the "Steering and Sailing Rules," in an action arising from a collision between a steamboat and schooner, the burden of proof is on the steamboat to show that the collision arose from the negligence or fault of the schooner.

2. It is the duty of steamers to keep out of the track of sailing vessels, but this does not absolve the latter from the exercise of the most vigilant caution.

3. By the law of the state of New York, steamers must keep near the middle of the stream in the East river, and where the steamer was out of such a course, and this was one of the concurring causes of a disaster (the schooner being also in fault for want of vigilance), *held*, the damage should be divided.

[1] [Reported by Hon. William Cranch, Chief Judge.]

A proceeding in rem to recover damages alleged to have been sustained by the libellants' schooner, the B. F. Aumack, in a collision, August 21, 1876, with the steamboat C. H. Northram.

Muirhead & McGee, for libellants.
Grey & Benedict, for claimants.

NIXON, District Judge. In considering this case, it is to be observed that it was the duty of the steamboat to keep out of the way of the schooner, and that prima facie the steamboat is in fault, and is chargeable for the damages incurred. This was the rule announced by the supreme court in cases of collision between steam and sail vessels long before the adoption of the rules of navigation by the congressional act of April 29, 1864 (see section 4233, Rev. St.). St. John v. Paine, 10 How. [51 U. S.] 558; The Oregon v. Rocca, 18 How. [59 U. S.] 570; New York & V. Steamship Co. v. Calderwood, 19 How. [60 U. S.] 246; New York & L. U. S. M. Steamship Co. v. Rumball, 21 How. [62 U. S.] 383. The 20th of the "Steering and Sailing Rules" of said act, which provides that "if two vessels, one of which is a sail vessel, and the other a steam vessel, are proceeding in such directions as to involve risk of collision, the steam vessel shall keep out of the way of the sail vessel," is the expression of the legislative approval of the justice and propriety of the rule. The collision of the vessels, the injury to the schooner, and consequent damage being admitted, it results from the above rule that the burden of proof is on the steamboat to show that the collision arose from the negligence, mismanagement, or fault of the schooner.

Two specific grounds of defence were set up in the answer: (1) That the schooner was negligent and in fault in not having a proper lookout. (2) That the schooner did not beat out her tack, but went about prematurely, and thus brought on the collision. (The judge finds the first point well taken, and holds that the notion that, as steamboats are bound by the laws of navigation to keep out of the way of schooners, there is no need for great caution and vigilance, is an erroneous one, and says): It is undoubtedly the duty of steamers, which are more absolutely under control than sailing vessels, to keep out of the track of the latter; but such a rule does not absolve the sail vessel from the exercise of a most vigilant caution. Rev. St. § 4233, Rule 24. (On the second point it is held that the schooner did not reasonably out her course, and that she largely contributed to the disaster by going about too soon.)

The first section of the act of the legislature of New York, passed April 12, 1848, to which no reference was made on the argument, but which I understand is still in force,—2 Rev. St. N. Y. (5th Ed.) 950,—requires all steamboats passing up and down the East river, between the Battery and Blackwell's Island,

to be navigated as near as possible in the center of the river. The law has been invoked by the courts of admiralty and strictly enforced in a number of instances. The late Mr. Justice Nelson, in The Bay State [Case No. 1,149], in referring to it, says: "This law is peremptory. The masters of vessels are bound to obey it, and have no discretion except in cases of necessity. It is a mistake on the part of those navigating vessels in this harbor to suppose that they may indulge the exercise of their own judgment and discretion in regard to the proper mode of navigation. If they disregard the statute, they do it at their peril. In such cases, they are not only guilty of a crime, according to the statute, but they must take the hazard of the consequences to their vessel, when so out of the proper track, and in an illegal course. * * *" Again, in The E. C. Scranton [Id. 4,273], the same learned judge applied its provisions to the case of a ferryboat, plying between Peck Slip and Williamsburgh,—a distance of more than a mile. * * * (In a review of the evidence, the judge holds that the steamboat was not in the middle of the stream.) I am of the opinion that the steamboat was also in fault in navigating the river so far from the middle of the stream; that her being so near the Brooklyn shore was one of the concurring causes of the disaster; and that, as is usual in such cases, the damages ought to be divided. A reference and division of damages ordered.